# EXHIBIT 1

**SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES AND BLUEPOINT WIND, LLC**

This Settlement Agreement ("Agreement") is entered into as of this 27th day of April, 2026 by and between the United States and Bluepoint Wind, LLC (collectively, the "Parties").

**WHEREAS,** in February 2022, the Department of the Interior ("DOI"), acting through the Bureau of Ocean Energy Management ("BOEM"), held a lease sale under 43 U.S.C. § 1337(p) of the Outer Continental Shelf Lands Act ("OCSLA") for offshore wind energy development in the New York Bight lease area;

**WHEREAS,** the winning bidder for Lease No. OCS-A 0537 was OW Ocean Winds East, LLC;

**WHEREAS,** OW Ocean Winds East, LLC successfully bid a $765,000,000 bonus bid for Lease No. OCS-A 0537 and deposited that amount into the United States Treasury, through DOI's Office of Natural Resources Revenue ("ONRR");

**WHEREAS**, BOEM fully executed Lease No. OCS-A 0537 with OW Ocean Winds East, LLC with an effective date of May 1, 2022;

**WHEREAS**, on July 26, 2022, via the filing of a Certificate of Amendment to the Certificate of Formation, OW Ocean Winds East, LLC formally changed its name to Blue Point Wind, LLC ("Bluepoint");

**WHEREAS**, Bluepoint is owned by Bluepoint Winds Holdings, LLC, which is jointly owned, 50% each, by OW North America LLC and Seaway Energy Holdings, LP;

**WHEREAS**, BOEM and Bluepoint later amended Lease No. OCS-A 0537 on January 16, 2025;

**WHEREAS,** no construction activities have been undertaken on Lease No. OCS-A 0537, but Bluepoint has incurred at least $100,000,000 to develop Lease No. OCS-A 0537;

**WHEREAS,** Bluepoint currently owns Lease No. OCS-A 0537;

**WHEREAS,** the Department of War has raised classified national security concerns about development of this lease that were not known to BOEM at the time of lease issuance and that would have prevented the lease issuance if they had been considered;

**WHEREAS,** if this offshore wind project would have continued, BOEM would have issued to Bluepoint an order to suspend construction and operations of this project indefinitely due to national security issues, similar to the suspension order issued by BOEM to five other offshore wind projects on December 22, 2025;

**WHEREAS,** Bluepoint has asserted that BOEM's discontinuation of action with respect to the Construction and Operations Plan and other actions are in breach of or substantially impair the value of Lease No. OCS-A 0537, and that a suspension order would constitute a further breach or impairment of its rights under Lease No. OCS-A 0537, and that Bluepoint accordingly intends to immediately commence claims against the United States in the United States Court of Federal Claims asserting claims for breach of contract and/or uncompensated takings under the Fifth Amendment of the United States Constitution;

**WHEREAS,** Bluepoint forgoes the five-year suspension period set forth in 43 U.S.C. § 1334(a)(2)(B) and requests that Lease No. OCS-A 0537 be cancelled in accordance with the terms in this Agreement Lease No. OCS-A 0537 as provided herein;

**WHEREAS,** DOI has determined that cancelling Lease No. OCS-A 0537 is in the public interest because it will bring certainty to the status of Lease No. OCS-A 0537 and assist in preventing a national security threat;

**WHEREAS,** DOI has referred this potential dispute to the U.S. Department of Justice ("DOJ") for defense of any claim against the United States and the Attorney General's authorized representative has approved resolution of the dispute in accordance with the terms of this

Agreement and will submit it for payment from the Judgment Fund;

**WHEREAS,** the Parties desire to set forth the terms of their Agreement in writing.

**NOW THEREFORE,** in consideration of the mutual agreements, covenants, representations, warranties and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. The Parties agree to the following definitions for the purposes of this agreement:

A. The "United States of America" and/or "United States" shall be inclusive of DOI, BOEM, ONRR, and including any and all agencies, officers, and employees of DOI.

B. "Affiliate" means, with respect to Bluepoint, any Entity that, directly or indirectly through one or more intermediaries, itself or together with one or more other Entities, controls, is controlled by or is under common control with Bluepoint. For the purposes of this definition of "Affiliate": "control" means the power, direct or indirect, to determine, direct or decide the management and policies of an Entity, whether through the ownership of voting securities, by contract or otherwise, and the term "controlled" has a correlative meaning; provided that any Entity that, directly or indirectly, (1) owns fifty percent (50%) or more of the voting securities of or (2) has the right to receive fifty percent (50%) or more of the distributions from, any Entity shall be deemed to "control" such Entity, including any member owning at least 50% of the equity interests of Bluepoint Winds Holdings, LLC, the direct owner of all the equity interests of Bluepoint.

C. "Entity" means any legal entity (including without limitation any

corporation, company, partnership, limited liability company, trust, or group).

D. "Investment Entity" means any Entity, investment fund or co-investment vehicle in which Bluepoint or any of its Affiliates, directly or indirectly, controls by the power, direct or indirect, to determine, direct or decide the management and policies of such Investment Entity by contract or otherwise holds an equity or similar ownership interest, whether controlling or non-controlling.

E. "Eligible Expenditures" means all and any amounts that Bluepoint, any Affiliate of Bluepoint or any Investment Entity of any such Affiliate expend to (i) make any direct payment of capital expenditures for the development of Conventional Energy Projects in the United States; or (ii) contribute cash to any Entity for the development of Conventional Energy Projects in the United States. By way of example, a cash equity investment made by an Investment Entity into an entity developing a certain LNG project in Texas, USA shall, for avoidance of doubt, qualify as Eligible Expenditures for the purpose of this Agreement.

F. "Conventional Energy Projects" means any investment in (i) oil & gas production, gathering, transportation, processing, storage or refining, (ii) production, gathering, transportation, processing, storage or developing liquefied natural gas, (iii) generation or transmission of non-renewable based electricity (including for the sake of clarity CCGTs), (iv) tank farms and, (v) any related infrastructures to (i) – (iv).

2. Bluepoint agrees to make or arrange for an Affiliate or its or their Investment Entities to make Eligible Expenditures in the aggregate amount of up to $765,000,000 on Conventional Energy Projects within the United States between December 18, 2025 and December 31, 2026. Any Eligible Expenditures counted under this Agreement will not count towards Eligible

Expenditures in the agreement for Lease No. OCS-P 0564.

3. Once Bluepoint has caused to be provided a reasonable, confidential assurance opinion from a third party auditor and any reasonable supporting documentation (in the form of bank statements, filings or any other valid proof) to the Assistant Secretary – Policy, Management, and Budget verifying that Bluepoint, its Affiliates and/or any Investment Entity of such Affiliates have made Eligible Expenditures that satisfy the condition in Paragraph 2, DOI will review and confirm in writing the satisfaction of the requirements of this Paragraph and of Paragraph 2, above, within fifteen business days of receipt of such documentation (such confirmation not to be unreasonably withheld). In light of the sensitive financial information in the documentation, DOI will treat the documentation provided in accordance with the paragraph as confidential and sensitive business information not subject to public disclosure. Bluepoint will maintain documentation relating to the payment of the Eligible Expenditures for a period of three years, during which time DOI will have the right to request that documentation.

4. Upon DOI's written confirmation that the condition in Paragraph 3 has been satisfied in full (the "Effective Date") the Parties shall be deemed to have waived any and all provisions of Lease No. OCS-A 0537 that would prevent DOI from cancelling Lease No. OCS-A 0537 effective immediately without undergoing a suspension of five years before termination and agreed that Lease No. OCS-A 0537 can be cancelled without a term of suspension.

5. Within five business days of the Effective Date of this Agreement, DOI will cancel Lease No. OCS-A 0537 and inform ONRR that Lease No. OCS-A 0537 has been cancelled.

6. As of the Effective Date, the United States, in full and final satisfaction of Bluepoint claims with respect to Lease No. OCS-A 0537, agrees to pay Bluepoint through the Judgment Fund an amount equivalent to the Eligible Expenditures made by Bluepoint or its Affiliates or its Affiliates' Investment Entities pursuant to Paragraph 2 (the "Settlement Amount").

Within five business days of the Effective Date of this Agreement, the United States will submit a request for payment in the amount equivalent to the Settlement Amount to the Judgment Fund Branch at the United States Department of the Treasury's Bureau of the Fiscal Service.

7. DOI will reinstate Lease No. OCS-A 0537 at the request of Bluepoint (within no more than 90 days of such request) if the Settlement Amount has not been disbursed by the Judgment Fund Branch at the United States Department of the Treasury's Bureau of the Fiscal Service within a reasonable time (no more than 90 days) after the submission of the request for payment set forth in Paragraph 6.

8. Suspension of Obligations. From the date this Agreement is executed until the latter of (a) cancellation of Lease No. OCS-A 0537 or (b) reinstatement of Lease No. OCS-A 0537 pursuant to Paragraph 7, Bluepoint shall be released from any further performance of any obligations under Lease No. OCS-A 0537. In the event of reinstatement of Lease No. OCS-A 0537, Bluepoint's failure to perform in reliance on this Paragraph shall be excluded from consideration of whether Bluepoint has otherwise performed under Lease No. OCS-A 0537 in the event any dispute arises with respect to Lease No. OCS-A 0537, and Bluepoint shall be afforded a reasonable extension of any deadlines in Lease No. OCS-A 0537 to account for the period of suspension under this Paragraph.

9. Covenant Not to Sue. Unless set forth otherwise in this Agreement, or unless Lease No. OCS-A 0537 is reinstated pursuant to Paragraph 7, the Parties agree that they will not bring, commence, institute, prosecute, or maintain any action at law, proceeding in equity, or any other claims for damages or any other relief whatsoever that relates to, arises from, or is based, in whole or in part, on Lease No. OCS-A 0537, other than an action to enforce the terms of this Agreement and/or seek damages that arise directly from this Agreement.

10. Release and Discharge. Upon payment of the Settlement Amount, Bluepoint and

its Affiliates, on the one hand, and the United States, on the other, hereby release and discharge each other from any and all claims, causes of action, liability, and damages, whether known or unknown, of any nature or type, that either have or may have against the other arising out of or in relation to Lease No. OCS-A 0537, however, the United States reserves any claim based upon fraud.

11. No Admissions. Except as otherwise expressly stated herein, nothing in this Agreement constitutes an admission of any fact, or an admission of any liability, by the Parties.

12. Public Disclosure. The Parties consent to the disclosure of this Agreement to the public. This consent does not extend to any information or documentation not contained in the text of this Agreement.

13. Voluntary Agreement/ Advice of Counsel. The Parties agree and declare that they have voluntarily agreed to this Agreement of their own free will and accord, acting upon their own volition, and after consulting with their legal counsel and advisors and without any degree of duress or compulsion.

14. Legal Fees. The Parties will bear their own legal fees and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Disclaimer of Reliance. Except as contained in this Agreement, the Parties expressly disclaim reliance upon any facts, promises, undertakings or representations made by any other Party, any other Party's representative, or any other Party's attorney in the execution of this Agreement.

16. Consideration. The Parties acknowledge that the provisions of this Agreement provide mutually sufficient consideration for this Agreement and its enforcement.

17. Binding Effect. This Agreement is binding on each Party and their successors, transferees, heirs, and assigns.

18. Entire Agreement/Merger and Modification. This Agreement constitutes the complete agreement between the Parties, and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions among the Parties, whether oral or written, with respect to Lease No. OCS-A 0537. This Agreement may not be amended or rescinded except by mutual written consent of all the Parties.

19. No Third-Party Beneficiaries. This Agreement is intended to be for the benefit of the Parties only. Except as otherwise expressly stated herein, this Agreement is not intended to confer upon any person who is not a Party hereto any rights or remedies hereunder, and no person other than the Parties hereto is entitled to rely on any representation, covenant, or agreement contained herein.

20. Laws, Jurisdiction, & Venue. This Agreement is governed by the laws of the United States. For purposes of construing this Agreement, this Agreement is deemed to have been drafted by both Parties to this Agreement and is not, therefore, to be construed against any Party for that reason in any subsequent dispute. The Parties agree that this Agreement is not judicially reviewable, except for instances of fraud or misrepresentation by Bluepoint or its Affiliates or to enforce its terms. This Agreement has no precedential value and is not admissible in any proceeding other than a proceeding related to fraud or misrepresentation by Bluepoint or its Affiliates or to enforce the terms of this Agreement.

21. Enforceability. This Agreement must be signed by each and every Party to be enforceable against any Party. This Agreement is effective on the date of signature of the last signatory to the Agreement.

22. No Admission of Liability. The United States specifically denies any liability related to Lease No. OCS-A 0537. Further, subject to the execution and performance of the Agreement, Bluepoint and its Affiliates agree that no liability or damages are attributable to the

United States as the result of Lease No. OCS-A 0537, this Agreement, and/or the actions taken by the United States pursuant to this Agreement. This Agreement is being made purely upon a cooperative basis by the Parties to resolve the claims described above, and this Agreement, and/or any performance under this Agreement pursuant hereto, is not allowed to be used as evidence of liability of any of the Parties in any suit or suits, claims, causes of action, or in any public comment whatsoever, except as necessary to enforce this Agreement.

23. Authority. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. Non-Appropriation. Nothing in this Agreement may be construed to commit a federal agency or official to expend funds not appropriated by Congress. Nothing in this Agreement may be interpreted as a commitment or requirement that DOI obligate funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.

25. Counterpart Execution. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26. Fulfillment. This Agreement will be considered fulfilled when Lease No. OCS-A 0537 has been cancelled and the United States has paid the Settlement Amount to Bluepoint or its designee(s) under this Agreement.

[Signature page follows.]

**UNITED STATES DEPARTMENT OF THE INTERIOR**

Doug Burgum
Secretary of the Interior

Date: April 27, 2026

**UNITED STATES DEPARTMENT OF JUSTICE**

Stanley Woodward
Associate Attorney General

Date: 04.27.26

**BLUEPOINT WIND, LLC**

Michael Brown
Manager and CEO of OW North America

Date: APRIL 27TH 2026.